UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANELL SMITH,

       Plaintiff,                                      Hon. Paul L. Maloney

v.                                                      Case No. 1:08-CV-319

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 33 years of age at the time of the ALJ's decision. (Tr. 21, 41). She completed the tenth grade and worked previously as a food service worker and a vending machine attendant. (Tr. 57-58, 61).

Plaintiff applied for benefits on August 13, 2003, alleging that she had been disabled since July 8, 2003, due to "mental problems." (Tr. 41-43, 56, 388-91). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 23-40, 393-406). On February 16, 2006, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff and vocational expert, Sandra Steele. (Tr. 410-34). In a written decision dated October 27, 2006, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 15-21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 6-9). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **RELEVANT MEDICAL HISTORY**

I.    MENTAL IMPAIRMENTS

On January 28, 2002, Plaintiff was examined by Dr. Cheryl Jack. (Tr. 103-05). Plaintiff reported that she was experiencing "irritability." (Tr. 103). Plaintiff reported that her "primary problem is her dissatisfaction with her marriage." (Tr. 103). Plaintiff reported that she had "outgrown" her husband and was "not quite sure how she wants to deal with the situation." (Tr. 103). The results of a mental status examination were unremarkable and the doctor observed that Plaintiff "does not appear to be depressed whatsoever." (Tr. 104-05). Plaintiff was diagnosed with a mood disorder, not otherwise specified. (Tr. 105). Her GAF score was rated as 65-70.[1] (Tr. 105). Plaintiff was prescribed Depakote to "sort of cut the edge off" her anxiety and irritability. (Tr. 105).

On August 29, 2002, Plaintiff reported that she "left her husband and stopped [taking her] medication about 4-5 months ago." (Tr. 94). Plaintiff later returned to her husband and began experiencing stress and panic attacks. (Tr. 94). Plaintiff was diagnosed with marital problems and poorly controlled bipolar disorder. (Tr. 94).

On December 26, 2002, Plaintiff reported that she was "becoming increasingly more depressed" and wanted to "be put back on some medication that will help improve her mood." (Tr. 92). Plaintiff reported her marital problems negatively impacted her mood. (Tr. 92). The results of a mental status examination were unremarkable. (Tr. 92). Plaintiff was prescribed Prozac. (Tr. 93).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A score of 65-70 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

On February 6, 2003, Plaintiff reported that her mood had "improved" on Prozac. (Tr. 91). Plaintiff nonetheless felt that "more improvement" was needed, so her Prozac dosage was increased. (Tr. 91). On May 8, 2003, Plaintiff reported that her dosage increase "has been very helpful." (Tr. 89). Plaintiff denied experiencing mania, anger, or irritability. (Tr. 89). Plaintiff was "engaging" and the results of a mental status examination were unremarkable. (Tr. 89).

Treatment notes reveal that Plaintiff regularly participated in therapy from June 2003 through December 2005. (Tr. 205-302, 346-48, 356-60, 362-65, 369-75). Therapy treatment notes revealed no evidence of significant disturbance or distress and Plaintiff's GAF score was consistently reported as 60.[2] (Tr. 205-302).

On November 17, 2003, Plaintiff participated in a consultive examination conducted by Timothy Strang, Ph.D. (Tr. 124-28). Plaintiff reported that she was presently working "at a warehouse packing food," a job which she has held for "over two years." (Tr. 124). Plaintiff asserted, however, that she was disabled "due to mental problems." (Tr. 124). Plaintiff reported that she experienced days "where [she] can't function." (Tr. 124). Plaintiff also reported experiencing low back pain. (Tr. 124). The results of a mental status examination were unremarkable. (Tr. 126-27). Plaintiff was diagnosed with bi-polar disorder and her GAF score was rated as 55.[3] (Tr. 127).

On December 4, 2003, Dr. E. Florante completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 141-54). Determining that Plaintiff suffered from bipolar disorder, Dr. Florante concluded that Plaintiff satisfied the Part A criteria for Section 12.04

---

[2] A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

[3] A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

(Affective Disorders) of the Listing of Impairments. (Tr. 141-50). Dr. Florante determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 151). Specifically, the doctor concluded that Plaintiff experienced no restrictions in the activities of daily living, no difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and once or twice experienced episodes of decompensation. (Tr. 151).

Dr. Florante also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 137-39). Plaintiff's abilities were characterized as "moderately limited" in one category. (Tr. 137-38). With respect to the remaining 19 categories, however, the doctor reported that Plaintiff was either "not significantly limited" or that there existed "no evidence of limitation." (Tr. 137-38).

Treatment notes dated September 2, 2004, indicate that Plaintiff "has made significant changes in her life which have been of benefit to her." (Tr. 194). Treatment notes dated November 24, 2004, indicate that Plaintiff "continues to maintain a stable mood" and was "active in the group." (Tr. 229). Treatment notes dated January 10, 2005, indicate that Plaintiff had recently taken a trip to Kentucky with her husband. (Tr. 244).

On March 17, 2005, Plaintiff reported that she "continues to work 20 hours a week in an adult foster care home." (Tr. 199). Plaintiff reported that she was able to use the skills she learned in therapy "to get herself better emotionally regulated." (Tr. 199). Treatment notes dated May 9, 2005, indicate that the "major stressor" in Plaintiff's life was her relationship with her husband. (Tr. 278). On May 23, 2005, Plaintiff reported that she was preparing to take a vacation to Las Vegas. (Tr. 280).

Treatment notes dated July 18, 2005, indicate that Plaintiff's "most difficult days" were "related to stresses at home and having to work when she hadn't planned." (Tr. 294). On August 5, 2005, Plaintiff reported that her depression was "lifting." (Tr. 376). Treatment notes dated September 6, 2005, indicate that Plaintiff's GAF score was 60. (Tr. 369).

On October 6, 2005, Plaintiff reported that she was feeling significantly better following a recent medication modification. (Tr. 361). Plaintiff reported that her medication has been helpful with mood fluctuations and anger. (Tr. 361).

II.     PHYSICAL IMPAIRMENTS

X-rays of Plaintiff's lumbosacral spine, taken on July 8, 2002, revealed no evidence of abnormality. (Tr. 121). An August 25, 2003 examination of Plaintiff's spine revealed no evidence of abnormality. (Tr. 111). Plaintiff also exhibited "normal" range of motion. (Tr. 111).

X-rays of Plaintiff's right foot, taken on August 27, 2003, revealed "minimal early osteoarthritic" changes and a "small" calcaneal spur, but were otherwise "unremarkable." (Tr. 109).

On November 4, 2005, Plaintiff was examined by Dr. Matt Woods. (Tr. 327-28). Plaintiff reported that she was experiencing back pain. (Tr. 327). Plaintiff walked with a "normal gait" and exhibited "full range of motion" in her lumbosacral spine. (Tr. 328). Plaintiff exhibited "no atrophy and normal strength and tone." (Tr. 328). When the doctor palpated Plaintiff's spine, Plaintiff's response was "out of proportion with pressure applied." (Tr. 328). Dr. Woods diagnosed Plaintiff with lumbago. (Tr. 328).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) mental/emotional problems and (2) back problems. (Tr. 17). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ concluded that while Plaintiff was unable to

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

8

perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 19-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[5] which involved no contact with the public. (Tr.

---

[5] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

18-19). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sandra Steele.

The vocational expert testified that there existed approximately 73,200 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 430-31). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Evaluated Plaintiff's Obesity

Plaintiff asserts that the ALJ failed to take into consideration that she is obese and failed to consider the impact of her obesity on her ability to work pursuant to the procedure articulated in Social Security Ruling 02-01p.

The ALJ's opinion contains a thorough discussion of Plaintiff's medical background and treatment history. While Plaintiff's care providers recognized that Plaintiff was overweight, Plaintiff has failed to identify any evidence or opinion that her care providers considered that her obesity impaired her to an extent beyond that recognized by the ALJ. As for whether the ALJ complied with Social Security Ruling 02-01p, as the Sixth Circuit has observed:

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411-12 (6th Cir., Jan. 31, 2006).

The ALJ considered all of Plaintiff's conditions and impairments when assessing Plaintiff's residual functional capacity. None of Plaintiff's care providers expressed the opinion that Plaintiff's obesity impaired or limited Plaintiff to an extent beyond that recognized by the ALJ. As the ALJ's RFC determination is supported by substantial evidence, the Court discerns no error.

b. The ALJ Properly Evaluated Plaintiff's Credibility

The ALJ found Plaintiff less than credible because her subjective allegations of disability were contradicted by the medical evidence as well as Plaintiff's reported activities. (Tr. 19). Plaintiff asserts that the ALJ failed to give proper weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ correctly concluded, Plaintiff's subjective allegations of disability are contradicted by the observations and conclusions of Plaintiff's treating physicians, the objective medical evidence, and Plaintiff's reported activities. The Court finds, therefore, that there exists substantial evidence to support the ALJ's credibility determination.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  April 22, 2009                               /s/ Ellen S. Carmody
                                                            ELLEN S. CARMODY
                                                            United States Magistrate Judge