# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---

|

JANELL L. SMITH,                                    | Case No. 1:08-cv-319

    Plaintiff,                                | HONORABLE PAUL L. MALONEY

    v.                                        | Magistrate Judge Ellen S. Carmody

MICHAEL J. ASTRUE,                                  |
Commissioner of Health and Human Services,          |

    Defendant.                                |

|

---

## OPINION and ORDER

**Overruling the Petitioner's Objections and Adopting the R&R;
Affirming the Commissioner's Denial of Disability Benefits;
Terminating and Closing the Case**

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on April 15, 2009. Plaintiff Janell L. Smith ("Smith") filed timely objections on May 2, 2009 and the defendant Commissioner filed a timely response on May 15, 2009. The court finds that Smith's first objection is sufficiently specific and articulated to trigger *de novo* review of the R&R's treatment of the obesity issue, but it lacks merit[1]. Smith's second

---

[1] "Only those objections that are specific are entitled to a *de novo* review under the statute." *West brook v O'Brien,* 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007)(Maloney, J.) (citing *Mira v Marshall,* 806 F.2d 636, 637 (6th Cir. 1986)(no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically

objection, however, is an unsupported conclusory objection.

**The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's objection.** For the reasons explained by the R&R, substantial evidence supported the ALJ's determination that Smith's impairments did not render her disabled during the insured period.

**Smith's first objection is entitled "The ALJ did not give sufficient weight to the effects of Plaintiff's morbid obesity on her ability to perform substantial gainful activity."[2]** P's

_____

consider")).

*See, e.g., Fairfield v Wacha,* 2008 WL 584940, *2(W.D. Mich. Feb.28, 2008)(Maloney, J.)("Fairfield's objection does not cite any case law or any Constitutional, statutory or regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's legal reasoning or conclusions. [These failings render Fairfield's purported objection the same as no objection at all.")(citing, *Wallace v Adams*, 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24, 1995)(p.c.) And *Bates v Chapleau*, 37 F.3d 1498, 1994 WL 532937 (6th Cir. Sept. 30, 1994)(p.c.)).

[2] Prior to 1999, the SSA's Listing of Impairments included obesity, meaning that at step three of the five-step analysis, there was "a generous presumption" that obese claimants were disabled. *Combs v. SSA*, 459 F.3d 640, 642 (6th Cir. 2006) (*en banc*) (Rogers, J., joined by C.J. Boggs and JJ. Batchelder, Gibbons, Sutton, Cook, and McKeague, with J. Griffin writing separately & concurring in pertinent part). The 1999 Listing for obesity stated:

Obesity. Weight equal to or greater than the values specified in Table I for males, Table II for females (100 percent above desired level), and one of the following:

A. History of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine; or

B. Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff; or

C. History of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema; or

D. Chronic venous insufficiency with superficial varicosities in a lower extremity

Objections at 2.  Smith begins her first objection by stating her ultimate contention and making a

specious attack on the Magistrate Judge's entirely appropriate reference to an unpublished opinion:

> The Magistrate Judge excuses the ALJ's failure to follow the directions contained
> in SSR 02-01p because plaintiff failed to show that her level III obesity ("morbid
> obesity") caused any effect upon her ability to perform full time, regular competitive
> employment, citing *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411-12 (6th Cir. Jan.
> 31, 2006)[.]  The case does not support the conclusion reached by the Magistrate
> Judge.
>
> First, the Magistrate Judge cited an unpublished opinion of the 6th Circuit court
> which is non precedential.

*Id.*  It is true that unpublished decisions of the Sixth Circuit do not bind anyone except the parties

to those particular cases, *US v. Flores*, 477 F.3d 431, 433-34 (6th Cir. 2007) (Griffin, J.), and the

same is true of district-court decisions, whether published in the Federal Supplement books or not,

*id.* at 438.  But Smith cites no authority for the odd proposition that courts may not, or should not,

consult non-binding decisions – which constitute a majority of opinions issued by the Sixth Circuit

and *all* the opinions of this court.  The court finds no such authority.

On the contrary, like judges throughout the Sixth Circuit, this court regularly discusses

---

> with pain on weight bearing and persistent edema; or
>
> E.  Respiratory disease with total forced vital capacity equal to or less than 2.0 L. or
> a level of hypoxemia at rest equal to or less than the values specified in Table III-A
> or III-B or III-C.

*Combs*, 459 F.3d at 643-44 (quoting 20 C.F.R. Part 404, Subpart P, App. 1, § 9.09 (1999)).  The
Commissioner deleted listing 9.09 effective October 25, 1999, following notice and comment.
*Combs*, 459 F.3d at 644 (citing 64 FED. REG. 46122, 46123 (Aug. 24, 1999)).  The Commissioner
explained that the criteria in listing 9.09 "were not appropriate indicators of listing-level severity
because they did not represent a degree of functional limitation that would prevent an individual
from engaging in any gainful activity."  *Combs*, 459 F.3d at 644 (citing 64 FED. REG. at 46124).
Experience convinced the SSA that the listing had "required findings of disability in some cases in
which the claimants were clearly not 'disabled' as defined in the Act."  *Combs*, 459 F.3d at 644
(citing 64 FED. REG. at 46125).

nonprecedential decisions when they can illuminate an issue. *See, e.g., US v. Keith*, 559 F.3d 499, 505 (6th Cir. 2009) ("Although unpublished decisions do not have precedential authority, they may be considered for their persuasive value in our analysis of the concept of reasonable suspicion, which does not permit of precise judicial permission and is dependent on circumstances.") (internal quotation marks and citations omitted)[3]; *Amerisure Mut. Ins. Co. v. Carey Transport., Inc.*, 578 F. Supp.2d 888, 905 (W.D. Mich. 2008) (Maloney, C.J.) ("While not bound to follow this unpublished decision, the court finds it persuasive.") (adopting logical interpretation of Michigan insurance law found in unpublished MI Court of Appeals decision); *Monehen v. Berghuis*, 2009 WL 702870, *19 (W.D. Mich. Mar. 16, 2009) (Neff, J.) ("Although *Renusch* is an unpublished decision, the Sixth Circuit's analysis distinguishing the standards applied in *Stanaway* and *Ritchie* is persuasive and applicable to petitioner's claim in this case.").

This court's decision whether to follow persuasive authority – such as decisions by our district courts, unpublished decisions of the Sixth Circuit, or *any* decisions from outside our circuit, published or otherwise –

> turns on factors such as whether the persuasive authorities employ logical reasoning;[4] whether they are internally consistent; whether they comport with established canons

---

3

*See* 6TH CIR. RULE 28(f), which provides, "Citation of unpublished opinions is permitted. FRAP 32.1(b) applies to all such citations." In turn, FED. R. APP. P. 32.1(b) permits citation to unpublished decisions issued after January 1, 2007, and 6TH CIR. RULE 28(g) extends that permission to all unpublished decisions.

4

*See, e.g., Poindexter v. McKee*, 2006 WL 322480, *3 n.1 (W.D. Mich. Feb. 10, 2006) (Wendell Miles, J.) ("while unpublished decisions carry no precedential weight," it was logical and realistic for the panels in several unpublished Sixth Circuit decisions to conclude that "a person of ordinary firmness would not forgo his right to grieve a physical assault by a prison employee in order to remain at a given facility or work at a particular job within the facility."), *mot. to amend den.*, 2006 WL 2265279 (W.D. Mich. Aug. 7, 2006).

> of construction or provide good reason for departing from such canons; whether they are consistent with a plain and sensible reading of any applicable provisions of the Constitution (taking into account the intent and understanding of the Framers), statutes (taking into account, when necessary and appropriate to clarify any ambiguity, the legislative history and intent), and regulations; and whether they comport with the letter and spirit of the binding precedents that govern the relevant area of the law.[5]

*Jones v. Bell*, 2008 WL 495317, *3 (W.D. Mich. Feb. 23, 2008) (Maloney, J.). To the extent consistent with binding precedent and valid legislative enactments, the court may also consider whether applying the persuasive authority would lead to an absurd or inequitable result, either in the particular case or as a general rule.

Non-binding decisions can have great utility when binding decisions on the contested issue are scarce, *see, e.g., Purnell v. Arrow Fin. Servs., LLC*, 2007 WL 421828, *2 (E.D. Mich. Feb. 2, 2007) (Robert Cleland, J.) ("Because relevant binding case law is limited, the court will consider persuasive published and unpublished case law from other jurisdictions."); and where the unpublished decision addresses exactly, or almost exactly the same issue as the court confronts, *see, e.g., Dedvukaj v. Equilon Enters., LLC*, 301 F. Supp.2d 664, 669 (E.D. Mich. 2004) (Steeh, J.) ("The case of *Rahim*, although unpublished, is especially persuasive in light of this case's identical PMPA issue."), *aff'd*, 132 F. App'x 582 (6th Cir. 2005).

And even where binding decisions clearly set forth the applicable legal standard, a non-binding decision may provide a factual scenario more similar to the facts of the case at bar than any binding decisions. *See, e.g. Korn v. Paul Revere Life Ins. Co.*, 2005 WL 2932073, *5 (E.D. Mich. Nov. 4, 2005) (Cleland, J.) ("This Court plainly determined that the reasoning of [Michigan Court

---

[5]

> *See, e.g., Dixon v. McNutt*, 2007 WL 1657398, *2 (W.D. Mich. June 5, 2007) (Bell, C.J.) ("[T]he *Williams* decision is unpersuasive as it incorrectly interprets *Wilkinson* [U.S. Supreme Court decision] and fails entirely to discuss *Sweeton* [a published 6th Circuit decision].").

of Appeals decision], though unpublished, was persuasive. *Its predicates were, in fact, so close to the instant case as to convince this court that an identical analysis should be applied* and that such analysis was determinative.") (emphasis added); *Mack v. Strategic Materials, Inc.*, 270 F. Supp.2d 934, 937 (E.D. Mich. 2003) ("*Brattin* . . . (unpublished), cited by the arbitrators, is persuasive authority directly on point with the facts of this case."), *aff'd*, 106 F. App'x 1000 (6th Cir. 2004).

Finally, Smith does not purport to identify any legal or logical defect in the holding and reasoning of the unpublished decision the Magistrate cited, *Bledsoe v. Barnhart*, 165 F. App'x 408 (6th Cir. 2006), trying instead to distinguish it factually.[6]

**Smith's first objection continues as follows:**

* * * Second, the case [] is factually distinguishable from the case at hand. In *Bledsoe*, the ALJ noticed the claimant's obesity and commented upon it at page 408:

> The ALJ did consider Bledsoe's obesity. First, the ALJ made explicit mention of Bledsoe's obesity in his finding of facts. Second, the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity. *See, e.g., Skarbek v. Barnhart*, 390 F.3d 500, 504, 105 Fed. Appx. 836 [sic] (7th Cir. 2004) (stating "although the ALJ did not explicitly consider [claimant's] obesity, it was factored indirectly into the ALJ's decision as a part of the doctors' opinions."). Drs. Long and Hughes considered Bledsoe's obesity. JAA 270 (note, in the caption, "alleged impairment: obesity"). Thus, the ALJ's opinion shows that he considered Bledsoe's obesity.

Here the ALJ did not even mention the severe impairment in the decision. He absolutely neglected to analyze it's [sic] effects upon plaintiff's ability to perform full time, regular competitive employment. This lack of consideration flies right in the face of SSR 02-01p's directions to adjudicators. The ALJ is not free to disregard the directions from the Commissioner as to how to adjudicate cases involving obesity[,] and the Magistrate Judge errs when she attempts to uphold a faulty

---

[6]

It is also curious to hear Smith intimate that it is inappropriate to cite non-precedential decisions, as she later relies on *Rojas v. Astrue*, 2009 WL 465768 (W.D. Mich. Feb. 24, 2009) (Jonker, J.), which itself has no precedential force.

process.  The ALJ committed a harmful legal error which should not be excused.

In *Rojas v. Astrue*, File No. 1:07-cv-1035 [2009 WL 465768 (W.D. Mich. Feb. 24, 2009) (Robert Jonker, J.)] this court has already determined that morbid obesity and its effects must be given full analysis by the ALJ when considering limitations to [RFC].  This case is even worse.  Here the ALJ failed to even mention the impairment, whether it be "severe" or not.  SSR 96-8p requires considering the impact of both severe and non-severe impairments on the ability to work:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."  While a "not severe" impairment(s) standing alone may not significantly limit a[b]ility to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual for performing past relevant work or may narrow the range of other work that individual may still be able to do.

P's Objections at 2-3.  First, Smith's citation of Judge Jonker's well-reasoned *Rojas* opinion is unavailing, because *Rojas* is readily distinguishable from the instant case.  Smith asserts that "*Rojas* . . . determined that morbid obesity and its effects must be given full analysis by the ALJ when considering limitations to [RFC]", but she overlooks the fact that the ALJ there expressly found obesity to be one of the claimant's severe impairments and then failed to discuss the effect of her obesity.  In this case, by contrast, the ALJ never found obesity to be a severe impairment for Smith,[7]

---

[7]

*See Johnson v. Astrue*, 2008 WL 746686 (E.D. Tenn. Mar. 18, 2008), where Judge Thomas Varlan explained,

> The ALJ was not required to consider whether plaintiff's obesity was a severe impairment because he determined that one of plaintiff's other impairments was severe. * * *  The second step [in the five-step disability analysis] requires that the AL[J] determine whether the claimant has a severe impairment. [20 C.F.R.] § 404.1520(a)(4)(ii).  "[U]pon determining that a claimant has one severe impairment, the Secretary [or the Commissioner] must continue with the remaining steps in his disability evaluation."  *Maziarz v. [HHS]*, 837 F.2d 240, 244 (6th Cir. 1987) . . . .

and her objections fail to point to specific medical opinion or other evidence, introduced before the ALJ, suggesting that her obesity on top of other impairments rendered her disabled – such that the ALJ arguably erred by not discussing the issue explicitly – let alone that such evidence and opinion was so compelling or uncontradicted that the ALJ *had to* then find her disabled on that basis.

Furthermore, in *Rojas* Judge Jonker found that the ALJ, if he did not ignore the evidence and expert opinion tending to support her claim of disability partially caused by obesity, at least accorded it legally-insufficient attention. For example, Rojas's treating physician, Troy Sasse, O.D., opined that the claimant's obesity, diabetes, and other conditions rendered her unable to perform any activities above the sedentary level, and even sedentary-level activities would leave her "severely fatigued." *Rojas*, 2009 WL 465768 at *4 and *5. Judge Jonker correctly concluded that the ALJ had committed several errors by giving short Schrift to this evidence in his opinion – errors which the ALJ in our case did not commit. For one thing, in *Rojas* "it appear[ed] that the ALJ equated Dr. Sasse's statement regarding plaintiff's ability to perform sedentary activities with the agency's definition of 'sedentary activities,' contrary to SSR 96-5p [1996 WL 374183 (July 2, 1996), which provides, in pertinent part, that "[a]djudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms]." *Rojas*, 2009 WL 465768 at *4. "In addition," Judge Jonker explained,

> [t]he [treating] doctor's opinion appeared more restrictive than the ALJ concluded . . . . [A]fter reviewing these records, the court concludes that the ALJ has failed to articulate good reasons for not crediting Dr. Sasse's opinions. While plaintiff submitted dozens of pages of medical records regarding her treatment by Dr. Sasse commencing in 2003, the ALJ did not address those records in any detail. The transcript contains well over 200 pages of medical records. It is difficult to reconcile the ALJ's brief summary of plaintiff's medical history and his observation that 'there

*Johnson*, 2008 WL 746686 at *2.

8

is a paucity of objective medical evidence of record to document the existence of any medically determinable impairment that possibly could cause the severe, totally disabling symptomatology that is alleged" . . . .

*Rojas*, 2009 WL 465768 at *5 (internal case citation and record citation omitted). By contrast, of all the reports and treatment notes in the record from treating, examining, and reviewing/consulting physicians in our case, Smith fails to identify any medical opinion suggesting that her obesity imposes limitations or restrictions more debilitating than those set forth in the ALJ's RFC determination. In a somewhat similar case, a Sixth Circuit panel affirmed the denial of disability benefits over the claimant's objection that the ALJ "failed to consider the impact of her obesity." *Essary v. SSA*, 114 F. App'x 662, 667 (6th Cir. 2004) (Moore, Sutton, N.D. Ohio D.J. John Adams). The panel explained that

> the ALJ did take Essary's obesity into account, stating in his decision that "degenerative disc disease of the lumbar spine, obesity, hypertension, and major depressive disorder, can reasonably be expected to result in some degree of functional physical and mental limitations . . . ." The absence of further elaboration on the issue of obesity likely stems from the fact that [claimant] failed to present evidence of any functional limitations resulting specifically from her obesity. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (rejecting claimant's "argument that the ALJ erred in failing to consider his obesity in assessing his RFC," explaining that "*Although his treating doctors noted that [the claimant] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations*, and he did not testify that his obesity caused additional restrictions.").

*Essary*, 114 F. App'x at 667 (emphasis added). In short, the ALJ's express reference to the claimant's obesity in *Essary* was brief and limited, and the panel deemed that aspect of the ALJ's opinion appropriate in light of his failure to identify expert medical opinion stating that his obesity imposed additional restrictions on his ability to work. Here too, Smith's failure to identify medical opinion supporting her allegation that obesity further restricts her ability to work means that she has not carried her burden of establishing disability (with obesity as part of the cause for the disability).

*See* 20 C.F.R. § 1512(a) ("In general, you have to prove to us that you are . . . disabled.  Therefore, you must bring to our attention everything that shows that you are . . . disabled.  This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are . . . disabled, its effect on your ability to work on a sustained basis."); SSR 86-8 ("The individual has the burden of proving that he or she is disabled and of raising *any issue* bearing on that determination or decision.").

Our Circuit rejected almost the same argument by another claimant who

> asserts that because her doctors' reports indicated her obesity, the ALJ was required to consider it as a possible impairment.  The problem with this argument is [that] the ALJ never received evidence suggesting that Ms. Cranfield or her doctors regarded her weight as an impairment.  In fact, Ms. Cranfield provided no evidence that her obesity affected her ability to work.  Moreover, 20 C.F.R. § 1512(a) required Ms. Cranfield to "furnish medical and other evidence that [the SSA] can use to reach conclusions about [her] medical impairment(s) and . . . its effect on [her] ability to work on a sustained basis."  *See* 20 C.F.R. § 1512(a).  Ms. Cranfield did not satisfy this requirement with respect to an obesity claim.  *Thus, the ALJ and the district court had no obligation to address Ms. Cranfield's obesity.*

*Cranfield v. SSA*, 79 F. App'x 852, 857 (6th Cir. 2003) (Moore, Gilman, <u>C.D. Ill. D.J. Richard Mills</u>) (emphasis added).

**As for the Social Security Rulings which Smith cites, she fails to show how the ALJ's failure to expressly discuss her obesity "flies . . . in the face of SSR 02-01p's directions to adjudicators."**  SSR 02-01p does acknowledge that

> [o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems.  It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems.  Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus – even in children; gall bladder disease; hypertension; heart disease; peripheral vascular disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea.  It is associated with endometrial, breast, prostate, and colon cancers, and other physical impairments.  Obesity may also cause or contribute to mental impairments such as

depression.  The effects of obesity may be subtle, such as the loss of mental clarity
or slowed reactions that may result from obesity-related sleep apnea.

SSR 02-01p, 2000 WL 628049 at *3.  In addition, the Ruling promises that at step three of the five-

step disability analysis, the SSA will

find that an individual with obesity "meets" the requirements of a listing if he or she
has another impairment that, by itself, meets the requirements of a listing.  We will
also find that a listing is met if there is an impairment that, in combination with
obesity, meets the requirements of a listing.  For example, obesity may increase the
severity of coexisting or related impairments to the extent that the combination of
impairments meets the requirements of a listing. * * *
* * *
We will also find equivalence if an individual has multiple impairments, including
obesity, no one of which meets or equals the requirements of a listing, but the
combination of impairments is equivalent in severity to a listed impairment.

SSR 02-01p, 2000 WL 628049 at *5.  But the obesity ruling then cautions "However, we will not

make assumptions about the severity or functional effects of obesity combined with other

impairments.  Obesity in combination with another impairment may or may not increase the severity

or functional limitations of the other impairment.  We will evaluate each case based on the

information in the case record."  SSR 02-01p, 2000 WL 628049 at *6.  In other words, the Ruling

does nothing to relieve Smith of the burden of marshaling competent medical opinion and evidence

to show *specifically* how her obesity exacerbated her other impairments, or interacted with them,

to render her incapable of all suitable work.  In the context of judicial review of the ALJ's decision,

Smith had the burden of showing specifically how the obesity, in combination with other

impairments, limited her ability to a degree inconsistent with the ALJ's RFC determination.  Smith's

objections fail to point to evidence and argument, submitted to the ALJ, by which she met that

burden.  And, contrary to Smith's assertions, "It is a mischaracterization to suggest that Social

Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability

claimants." *Bledsoe*, 165 F. App'x at 412, followed by *Webster v. SSA*, 2008 WL 207578, *3 and *5 (W.D. Mich. Jan. 24, 2008) (Neff, J.) ("the Commissioner is not required to consider obesity in every case. * * * While SSR 02-1p contemplates the possibility that a claimant could establish obesity as medically equivalent to Listing 1.02A, . . . plaintiff does not identify any medical evidence to support the claim that her obesity is medically equivalent to Listing 1.02A.").

**Smith's first objection concludes as follows:**

The medical evidence of record ("MER") certainly shows that plaintiff suffers from some of the usual effects of morbid obesity. She has chronic pain of two weight bearing joints, her low[er] back[,] and right foot[,] which has osteoarthritis. (AR 107-122) These findings by her treating physician would impact her ability to stand the necessary 6/8 hours required by light work capacity. Her legs have also have demonstrated varicose veins and chronic venous insufficiency for which she may need surgery and her doctor, Dr. Abushmaies, a vascular surgeon, has recommended [W]eight [W]atchers[8] as part of her therapy. (AR 315-334)

These references to weight and medical conditions shows a relationship between morbid obesity and other medical conditions that also affects plaintiff's ability to function effectively in the workplace so that her morbid obesity causes some limitation of function that may, in combination with her observed severe impairments, cause disability. Plaintiff has fatigue, depression, venous insufficiency of her legs, arthritis of her ankles[,] and pain. All of these symptoms are exacerbated by Level III obesity. Pursuant to 20 C.F.R. §§ 404.1546, 416.946, at this stage, the [ALJ] is responsible for assessing [RFC]. The [ALJ] <u>must</u> determine [RFC] based on <u>all</u> the evidence and impairments contained in the record. 20 C.F.R. §§ 404.15456, 416.945.

---

[8]

Smith's objections do not allege that she followed the recommendation of Dr. Abushmaies that she lose weight in order to improve her health and possibly ameliorate some of her impairments, and the record does not seem to contain evidence of such compliance during the insured period. This could be another basis for holding that the ALJ committed no reversible error by not expressly discussing her obesity as contributing to disability in combination with other impairments. *Cf. Kruger v. SSA*, 2008 WL 4283549, *3 (W.D. Mich. Sept. 12, 2008) (Wendell Miles, Senior J.) ("[A]lthough there is evidence in the record to support the ALJ's finding that plaintiff is obese . . . *, there is no evidence that plaintiff ever sought treatment for her obesity* or claimed that it impacted her ability to work. Under the circumstances, *given the lack of evidence that plaintiff sought treatment for obesity, plaintiff's argument that the ALJ never considered any physician's opinion regarding plaintiff's obesity is without merit.*") (emphasis added).

*Id.* at 1-3 (paragraph breaks added). But it was not enough for Smith to merely introduce such evidence before the ALJ without also introducing medical opinion showing specifically how each adverse effect of obesity would eliminate some function or ability needed for gainful employment even at a "light" level. It was not enough for her to argue that the evidence shows that she "suffers from some of the usual effects of morbid obesity." Again, Smith's objections do not identify specific medical opinion stating that her obesity impaired or limited her RFC beyond the extent of limitation and impairment recognized by the ALJ. *See Kruger v. SSA*, 2008 WL 4283549, *3 (W.D. Mich. Sept. 12, 2008) (Miles, J.) ("None of Plaintiff's care providers expressed the opinion that Plaintiff's obesity impaired or limited Plaintiff to an extent beyond that recognized by the ALJ. As the ALJ's RFC determination is supported by substantial evidence, the Court discerns no error.");

*accord Burch v. Barnhart*, 400 F.3d 676, 681-84 (9th Cir. 2005). In short,

> [w]hile plaintiff is correct that the ALJ did not specifically mention her obesity in his analysis of her ability to work, the record reflects that the ALJ considered plaintiff's ability to work based upon her overall condition as a result of the combination of all of her impairments including her obesity. The ALJ stated that he reviewed the entire record. The record that was before the ALJ includes notations of plaintiff's obesity and the limitations caused by her obesity. The ALJ made findings regarding plaintiff's limitations and determined that though her impairments reduced her functional capacity, the reduction does not preclude all work activity. Because the ALJ considered the impact of plaintiff's overall condition and functionality on her ability to work, his determination is supported by substantial evidence. Accordingly, plaintiff's objection to Magistrate Judge [Carmody]'s determination that the ALJ did not err in . . . failing to consider the impact of plaintiff's obesity on her ability to work will be overruled.

*Johnson v. Astrue*, 2008 WL 746686, *3 (E.D. Tenn. Mar. 18, 2008) (record citations omitted).[9]

---

[9]

*Cf. Sattler v. SSA*, 2008 WL 2115256, *4 (E.D. Mich. May 19, 2008) (Victoria Roberts, J.) ("The ALJ also did not err in failing to consider Plaintiff's alleged obesity. Only Dr. James C. Maher . . . and Dr. Westervelt commented on Plaintiff's weight. Dr. Maher stated Plaintiff is obese and needs to 'work on' his weight. Dr. Westervelt noted that plaintiff is a 'somewhat heavyset man.' This minuscule amount of evidence does not prove Plaintiff's alleged obesity causes

**Smith's second objection is entitled "The ALJ applied wrong standards in determining**

**plaintiff's credibility and his credibility finding is not supported by substantial evidence on the**

**whole record."** P's Objections at 4. In its entirety, the second objection reads as follows:

> The Magistrate Judge joined the ALJ in supplying conclusionary [sic] findings instead of facts to attempt to justify discrediting the plaintiff's testimony which disable her [sic]. Observe at step 2 of the sequential analysis that the ALJ found that plaintiff suffers from mental/emotional problems and back problems. That is tantamount to saying that her testified-to back problems and mental problems cause serious interference with her ability to p[er]form full time, regular competitive employment.

> If so, what facts support that conclusion? Do they also support plaintiff's version of her limited abilities to walk, stand, sit, lift and carry?

> The Step 2 finding is deficient in that the specific impairments are not spelled out. No review of the finding is possible when it is couched in such broad terms. What back problem is the ALJ referring to that seriously interferes with plaintiff's inability to perform work duties? Was it her lumbago or her chronic low back pain? Without specific findings the whole review of credibility is impaired.

> As usual, the ALJ is credited with great insight into credibility because he spent 1 hour or less in a hearing room with plaintiff. This is a fiction.

> The ALJ did not seem to notice or comment on plaintiff's appearance – 5 feet 5 inches tall and 280 pounds (BMI = 46.6) – or morbid, level III, obesity. At least the concept does not appear in the decision.

> Plaintiff is not impaired the same every day, but she is impaired enough of the time to be unable to consistently perform full time, regular competitive employment. This case is in need of remand.

*Id.* (some ¶ breaks added). This objection lacks merit for a number of reasons. First, Smith's

statement that the ALJ's finding that she suffered from mental/emotional problems and back

---

functional limitations."); *Campbell v. SSA*, 2009 WL 91967, *9 (E.D. Mich. Jan. 14, 2009) (Julian Abele Cook, J.) ("Absent evidence showing that a plaintiff's weight impaired her ability to do basic work activities, the court may not question the ALJ's finding on this issue. Although in this case Plaintiff injured her leg, there is no evidence on the record to support the finding that this injury, or her obesity, significantly impacted her ability [to] undertake work-related activities.").

problems "is tantamount to saying that [those] problems cause serious interference with her ability to" work full-time is simply a *non sequitur*, with no support in logic or the law. Second, Smith aks whether the finding that she suffered from such problems could "also support plaintiff's version [account]" of her limitations. But she makes no attempt to discuss *any* specific evidence and show how it actually does support her account of her limitations – let alone show that it reasonably supports *only* her account of her limitations and *not* the ALJ's determination thereof.

Third, Smith's contention that the ALJ's "failure" to sufficiently "spell out" her severe impairments at step two warrants *vacatur* and remand reflects a fundamental misunderstanding of the nature and purpose of that step in the analysis. Rejecting a related argument, our Circuit recently held, "Step two is 'a *de minimis* hurdle' that the claimant clears unless the impairment is only 'a slight abnormality that minimally affects work ability.'" *McGlothin v. SSA*, 299 F. App'x 516, 522 (6th Cir. 2008) (Cole, Gibbons, E.D. Ky. D.J. Karl Forester) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988))). Once any one impairment is found to be severe, the claimant meets her burden at step two and "the ALJ must consider both severe and nonsevere impairments in the subsequent steps". *Id.* Therefore, at step two, any failure to make a severity finding as to some impairment, or to list all impairments which the ALJ considered severe, provides no ground for disturbing the ALJ's decision.

Fourth, Smith's reiteration of the complaint about the ALJ's failure to expressly discuss obesity was addressed in detail above. Fifth, Smith's assertion that "she is impaired enough of the time to be unable to consistently" work is conclusory. Again, her objection identifies no specific medical evidence which corroborates her subjective allegations of disabling pain or limitations – let alone evidence which supports her version so strongly, in the absence of comparable evidence to the

contrary, that an ALJ could not reasonably doubt her credibility.

**Sixth and last, Smith characterizes as a "fiction" the premise that an ALJ "is credited with great insight into credibility because he spent 1 hour or less in a hearing room with plaintiff."** P's Objections at 4. But it is not for this court to decide whether it is sensible or fair to accord such strong deference to an ALJ's assessment of a claimant's credibility. That is a matter to be taken up with the United States Congress, which alone (with the President's signature) can enact a statute altering the legal standard on that score; with the SSA, which promulgates regulations in this area; or with the Sixth Circuit Court of Appeals sitting *en banc*. This court may not usurp the powers of a legislature or a regulator, and it is obligated to obey the holdings of our Court of Appeals' published decisions. Binding precedent holds that "'[u]pon review, the court must accord to the ALJ's determinations of credibility great weight and deference, particularly since the ALJ has the opportunity, which the court does not, of observing a witness's demeanor while testifying.'" *Luteyn v. SSA*, 528 F. Supp.2d 739, 749 (W.D. Mich. 2007) (Maloney, J.) (quoting *Jones v. SSA*, 336 F.3d 469, 477 (6th Cir. 2003)) (internal alterations & brackets omitted). *See also Allen v. SSA*, 561 F.3d 646, 652 (6th Cir. 2009) (citing *Walters v. SSA*, 127 F.3d 525, 531 (6th Cir. 1997)).

## ORDER

Accordingly, having reviewed the complaint, the parties' three briefs before the Magistrate Judge, the R&R, the plaintiff's objections to the R&R and the defendant's response thereto:

The plaintiff's objections [document # 10] are **OVERRULED**.

The R&R [document # 9] is **ADOPTED**.

The Commissioner's denial of disability benefits is **AFFIRMED**.

The complaint is **DISMISSED**.

This case is **TERMINATED** and **CLOSED**.

This is a final order.

**IT IS SO ORDERED this __7th__ day of July 2009.**


                                                    /s/ Paul L. Maloney
                                                    Honorable Paul L. Maloney
                                                    Chief United States District Judge